IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF FLORIDA – ORLANDO DIVISION

PATRICK J. MIKA, ) ) Plaintiff, ) ) Civil Action No. _____ v. ) ) COMPLAINT ROLLINS COLLEGE, ) AND DEMAND FOR JURY TRIAL ) Defendant. )
_____ )

COMPLAINT

I. INTRODUCTION & SUMMARY

1. This action challenges Rollins College's removal, exclusion, and ultimate academic suspension of Plaintiff Patrick J. Mika ("Plaintiff" or "Mika") in spring 2025 through a procedurally defective and discriminatorily applied Title IX process.

2.Key facts, all taken from Rollins' own records, are undisputed:

Date Event Source (Exhibit)

Mar 8–9 2025 Student 1 makes a secret audio recording in a gazebo at Student 1's request, staged by the complainant, intended to elicit statements from Mika. (Ex. G, Ex. N)

Mar 10 2025 Without any hearing or individualized risk analysis, Rollins issues an Emergency Removal/Interim Administrative Hold ("ERO") banning Mika from campus. (Ex. B)

Mar 10 2025 Mika is told by Dean of Students Leon Hayner that everything will be handled by Title IX Director Sarah Laake, and is given assurances by Dean Hayner that continuing his education will not be an issue

Mar 14 2025 Mika appeals the ERO; Dean Leon Hayner denies the appeal, expressly relying on an undisclosed "threat-assessment" that has never been produced. (Ex. M)

April 4 2025 Title IX Director Sarah Laake states verbally that the only option Mika has is to withdrawal from his classes, and that this investigation will under no circumstances conclude before the end of the academic semester. (Ex. K)

May 1 2025 Rollins circulates a "Preliminary Evidence Report." Every reference to the ERO and Mika's appeal is redacted; Mika's campus-safety interview and body-cam video are omitted. (Ex. C)

May 20 2025 Rollins suspends Mika academically for a GPA ≤ 1.25, explicitly "linked to the pending Title IX process," while Student 1 remains fully enrolled. (Ex. J, Ex. K)

May 29 2025 Rollins publishes their final evidence review, the review incorporated none of the Plaintiffs requested corrections or clarifications. (Ex. R)

June 12 2025 Slated Title IX hearing chair Johnathan Monti states twice to Plaintiff and his advisor in the Title IX process that he and another hearing panel member Matt Hawks were both involved in the ERO and Threat Assessment process. Monti refuses to recuse himself. (Ex. S, Ex. K)

3. Comparator: Student 1 is male, took part in the identical recorded conversation, and was not disciplined or removed. The only material difference between Student 1 and Mika is Mika's diagnosed autism.

4. Rollins' actions violated:

Title IX of the Education Amendments of 1972 (34 C.F.R. §§ 106.30, 106.44, 106.45);

§ 504 of the Rehabilitation Act (29 U.S.C. § 794);

The federal Wiretap Act (18 U.S.C. § 2511);

The Florida Security of Communications Act (Fla. Stat. §§ 934.03, 934.10); and

Rollins' own written contracts (Student Handbook, Title IX Policy, Disability Services Policy).

5. Mika seeks declaratory and injunctive relief (expungement, policy compliance), compensatory and punitive damages, statutory damages for wiretap violations, costs, and—if counsel is retained—reasonable attorneys' fees.

II. JURISDICTION

6. This Court has federal-question jurisdiction under 28 U.S.C. §§ 1331 & 1343.

7. Supplemental jurisdiction exists for state-law claims under 28 U.S.C. § 1367.

## III. VENUE 8.

Venue is proper in this District under 28 U.S.C. § 1391(b)(1)–(2) because the events occurred in Winter Park, Florida.

## IV. PARTIES

9. Plaintiff Mika is a permanent resident of Brevard County, Florida, and was a first-year Rollins student during spring 2025.

10. Defendant Rollins College is a private, non-profit institution in Winter Park, Florida, receiving federal financial assistance and thus subject to Title IX and § 504.

## V. FACTUAL ALLEGATIONS

### A. Emergency Removal Without Due Process

11. On March 10, 2025, Rollins issued Mika a "Notice of Emergency Removal" alleging "dating violence and retaliation" yet citing no conduct meeting 34 C.F.R. § 106.30. 1

12. The ERO letter and ERO appeal denial letter (Ex. B, Ex. M) states removal was based on a threat-assessment team recommendation, but Rollins has never produced any individualized risk analysis required by § 106.44(c).

13. Mika received no pre-removal hearing and no post-removal hearing despite College policy promising both.

### B. Denial of Educational Access and Disability Accommodation

14. After removal, Mika verbally requested remote class access and disability. accommodations from Title IX Director Sarah Laake

15. Laake replied that "withdrawal is your only option." (Ex. K).

16. In an follow-up call in April, Mika again asked for accommodation; Laake repeated that withdrawal was the only path, which Mika refused "because it would be under duress."

17. Rollins provided zero academic access—no Zoom links, no exam alternatives, no extended deadlines—while allowing Student 1 to continue uninterrupted.

### C. Illegally Staged Recording

18. On March 8–9 2025, Student 1, at the complainant's direction, secretly recorded Mika in a campus gazebo using a second phone. (Ex. G)

19. The conversation was ostensibly staged to elicit statements for use against Mika; Student 1 later admitted he "led [Mika] to repeat" prior comments. (Ex. C, Ex. R).

20. Florida is a two-party-consent jurisdiction, yet Rollins

(a) accepted the recording,

(b) transcribed and republished it to multiple officials, and

(c) made it the primary evidence supporting the ERO.

D. Selective Enforcement and Comparator Analysis

21. Both Mika and Student 1 are male and participated in the exact same recorded conversation. (Ex. R, Ex. G, Ex. C, Ex. K)

22. Only Mika was subjected to emergency removal, interim hold, and academic suspension, while Student 1 suffered no interim measures and remained enrolled.

23. The only material difference is Mika's autism diagnosis, placing him in a protected class under § 504.

E. Suppression and Redaction of Exculpatory Evidence

24. On March 10 Mika informed Title IX staff that Winter Park Police body-cam video showed both students calling the incident a "misunderstanding." (Ex. K, Ex. C, Ex. R)

25. Rollins never obtained or produced that video. (Ex. K, Ex. R)

26. The Preliminary Evidence Report (Ex. C), and the Final Evidence Report (Ex. R) deleted every reference to the ERO and Mika's appeal and omitted Mika's police interview— contrary to 34 C.F.R. § 106.45(b)(5)(vi) requiring full evidence disclosure.

F. Conflicts of Interest and Failure to Respond

27. Matt Hawks and Jonathan Monti both participated in the ERO/threat-assessment decisions yet later acted as purportedly neutral administrators overseeing Mika's Title IX Hearing. (Ex. B)

28. In April 2025 Mika asked Monti whether he would recuse himself; Monti confirmed he was involved in the ERO and refused to recuse himself.

29. Professor Jana Mathews—Mika's RCC professor and academic advisor—served simultaneously as advisor to the complainant, creating a direct advisory conflict. (Ex. R)

30. Mika emailed Laake multiple times with no response to issues or concerns. (Ex. K)

G. Academic Suspension Predicated on Ongoing Hold 31. On May 20 2025, Rollins suspended Mika for a first-semester GPA ≤ 1.25, expressly stating the decision was "linked to the pending Title IX process." (Ex. J, Ex. K)

32. Mika's failing grades were a direct consequence of the enforced absence; Rollins had denied him any means to attend classes or complete assignments.

H. Continuing Harm

33. Mika remains banned from campus records, has lost tuition and housing payments, job and graduate-school prospects, and continues to experience economic and emotional harm.

VI. CLAIMS FOR RELIEF Count 1 – Title IX: Procedural Defect, Erroneous Outcome, Retaliation (34 C.F.R. §§ 106.30, 106.44, 106.45)

34. Paragraphs 1-33 are incorporated.

35. Rollins deprived Mika of educational benefits by:

Imposing an ERO without the individualized risk analysis and pre/post hearings mandated by § 106.44(c) & § 106.45(b);

Relying on an illegally staged recording while suppressing exculpatory body-cam video;

Retaliating when Mika requested accommodations by telling him withdrawal was his "only option."

36. These procedural breaches caused concrete educational, economic, and reputational damage.

Count 2 – Section 504 of the Rehabilitation Act (29 U.S.C. § 794)

37. Paragraphs 1-33 are incorporated.

38. Mika is a qualified student with a disability (Autism).

39. Rollins denied him program participation solely by reason of disability by refusing requested accommodations, excluding him from classes, and selectively enforcing discipline against him but not Student 1.

40. Rollins acted with deliberate indifference after repeated requests for accommodation.

Count 3 – Federal Wiretap Act (18 U.S.C. § 2511)

41. Paragraphs 1-33 are incorporated.

42. Rollins knowingly used and disclosed an unlawfully intercepted oral communication in interstate commerce after Mika gave written notice of its illegality.

43. Mika is entitled to statutory and punitive damages.

Count 4 – Florida Security of Communications Act (Fla. Stat. §§ 934.03, 934.10)

44. Paragraphs 1-33 are incorporated.

45. Rollins' use of the secret recording violates Fla. Stat. § 934.03; Mika is entitled to damages under § 934.10.

Count 5 – Breach of Contract

46. Paragraphs 1-33 are incorporated.

47. The Student Handbook, Title IX Policy, and Disability Services Policy constitute a binding contract.

48. Rollins breached by

(a) denying promised hearings

(b) refusing accommodations expressly guaranteed

(c) redacting critical evidence contrary to § 106.45.

49. Mika suffered monetary and educational losses.

Count 6 – Breach of Implied Covenant of Good Faith & Fair Dealing

50. Paragraphs 1-33 are incorporated.

51. Even if Rollins had discretion under its policies, it exercised that discretion in bad faith—e.g., suppressing exculpatory evidence and retaining conflicted officials—destroying Mika's contractual right to fair process.

Count 7 – Abuse of Process / Misuse of Title IX

52. Paragraphs 1-33 are incorporated.

53. Rollins leveraged Title IX procedures as leverage to force Mika's withdrawal and sidestep disability obligations, an ulterior purpose outside Title IX's statutory scope.

Count 8 – Declaratory Judgment (28 U.S.C. §§ 2201–2202)

54. An actual controversy exists regarding the legality of Rollins' ERO, selective enforcement, recording use, denial of accommodations, and conflicts of interest.

55. Mika seeks declarations and corresponding injunctions to expunge records and compel Rollins' compliance.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Mika respectfully asks the Court to:

A. **Declare** that Rollins violated Title IX, § 504 of the Rehabilitation Act, the Federal Wiretap Act, and the Florida Security of Communications Act;

B. **Permanently enjoin** Rollins College to

1. **expunge** all records—digital, paper, and transcript notations—relating to the Emergency Removal, Title IX investigation, and academic suspension;
2. **vacate and dismiss** the underlying campus disciplinary case in its entirety; and
3. issue Mika a **formal written apology** on institutional letterhead, to be placed in Mika's student file and provided to any third party that previously received notice of the disciplinary action;

C. **Award** Mika **monetary damages**—including (i) economic damages, (ii) statutory damages under 18 U.S.C. § 2520 and Fla. Stat. § 934.10, (iii) punitive damages on the wiretap counts for willful or malicious violations, and (iv) any other compensatory or

nominal relief permitted by law—**in an amount not less than EIGHTEEN MILLION DOLLARS ($18,000,000), or such greater amount as the jury may determine**;

D. **Award costs and, if counsel is later retained, reasonable attorneys' fees**; and

E. Grant such other and further relief as the Court deems just and proper.

VIII. JURY DEMAND Plaintiff demands trial by jury on all issues so triable.

Dated: _June 18_ 2025 Respectfully submitted,

/s/ Patrick J. Mika Patrick J. Mika, pro se 2655 Boyd Ave. Melbourne, FL 32935 (321) 423-4958 patrick.mika4587@gmail.com

Certification under Fed. R. Civ. P. 11: I certify that the foregoing is well-grounded in fact and law and not interposed for any improper purpose.