UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

PATRICK J. MIKA,

     Plaintiff,

v.                                  Case No: 6:25-cv-1110-JSS-RMN

ROLLINS COLLEGE,

     Defendant.

_____/

## **<u>ORDER</u>**

Defendant, Rollins College, moves to dismiss the amended complaint, (Dkt. 11), for failure to state a claim. (Dkt. 13.) Plaintiff, Patrick J. Mika, proceeding pro se, opposes the motion. (Dkt. 31.) Upon consideration, for the reasons outlined below, the court grants the motion and permits Plaintiff to file a second amended complaint.

## **BACKGROUND**

According to the amended complaint, Plaintiff "is an individual with autism spectrum disorder" who was previously a student at Rollins College. (Dkt. 11 ¶ 8 (emphasis omitted).) That is, until another student purportedly recorded Plaintiff making a series of statements that led Defendant to investigate whether Plaintiff had violated its policies. (*See id.* ¶¶ 10–11, 20.) Plaintiff alleges that the investigative process and disciplinary proceedings were procedurally defective and unfair. (*See id.* ¶¶ 3–4, 13, 15–18, 23–28.)

While the investigation was ongoing, Plaintiff states that he was banned from campus and denied access to "all academic and residential services." (*See id.* ¶¶ 15, 20.) He claims that as a result, he was "unable to attend classes, complete assignments, or take examinations." (*Id.* ¶ 19.) Allegedly, Plaintiff requested accommodations, "citing his disability and the need for remote academic access," but his requests were denied. (*See id.* ¶¶ 19–21.) Ultimately, according to the amended complaint, Plaintiff's academic performance dipped, and Plaintiff was academically suspended. (*Id.* ¶¶ 26–28.)

Plaintiff sues Defendant through various statutory, contract, and tort claims. (*See id*. ¶¶ 29–89.) Initially, Plaintiff raised eight causes of action. (*See* Dkt. 1 ¶¶ 34–55.) The operative amended complaint adds six more. (*Compare id. with* Dkt. 11 ¶¶ 29–89.) In Count I, Plaintiff alleges that Defendant discriminated against him because of his sex, in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), when it purportedly provided procedurally defective and unfair disciplinary proceedings while refusing to take disciplinary action against another male student. (Dkt. 11 ¶¶ 29–33.) In Counts II and III, Plaintiff alleges that Defendant violated the Rehabilitation Act, 29 U.S.C. § 794(a), and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, when it refused his request for accommodations following his exclusion from campus. (*See* Dkt. 11 ¶¶ 34–43.) In Counts IV and V, Plaintiff alleges that Defendant violated the Federal Wiretap Act, 18 U.S.C. §§ 2511, 2520, and the Florida Security of Communications Act, Fla. Stat. §§ 934.03, 934.10, when it used and disclosed evidence of the recorded conversation in his disciplinary proceedings.

(*See* Dkt. 11 ¶¶ 44–53.)  Plaintiff further alleges in Count IX that Defendant's use of the recording violated his right to privacy under state law.  (*See id.* ¶¶ 66–69.)

In Counts VI and VII, Plaintiff asserts that Defendant breached a series of agreements between the parties, as well as the implied duty of good faith and fair dealing, when it allegedly provided him with defective and unfair disciplinary proceedings.  (*See id.* ¶¶ 54–60.)  Indeed, in Counts VIII and X, Plaintiff alleges that Defendant both negligently administered and intentionally misused its internal disciplinary proceedings.  (*See id.* ¶¶ 61–65, 70–73.)  In Count XI, Plaintiff further alleges that Defendant committed an intentional infliction of emotional distress (IIED) by rejecting his request for accommodations, providing unfair disciplinary proceedings, and removing him from school.  (*See id.* ¶¶ 74–76.)  In Count XII, Plaintiff claims that Defendant's administrators conspired to deny his rights secured by federal and state law when they engaged in the conduct supporting Count XI.  (*See id.* ¶¶ 77–80.)  In Count XIII, Plaintiff alleges that the administrators' conduct deprived him of due process in violation of the Fourteenth Amendment to the United States Constitution and article I, section 9 of the Florida Constitution.  (*See id.* ¶¶ 81–85.)  Finally, in Count XIV, Plaintiff asserts that Defendant breached duties of fairness, honesty, and good faith in conducting his disciplinary hearings.  (*See id.* ¶¶ 86–89.)

Plaintiff seeks approximately eighteen million dollars in damages.  (*Id.* at 20–21.)  He further asks the court to declare that Defendant violated his rights and direct Defendant to expunge his records, dismiss the disciplinary proceedings against him,

issue a formal written apology, and refrain from taking "further disciplinary or educational actions" against him. (*Id.* at 19–20.)

## APPLICABLE STANDARDS

Although the court "give[s] liberal construction" to pro se filings, *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007), the leniency afforded to pro se plaintiffs "does not give [the] court license to serve as de facto counsel for [them] or to rewrite an otherwise deficient pleading . . . to sustain an action," *GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998) (emphasis and citations omitted), *overruled on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Moreover, pro se plaintiffs are still "required . . . to conform to procedural rules." *Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir. 2002); *see Cummings v. Dep't of Corr.*, 757 F.3d 1228, 1234 n.10 (11th Cir. 2014) ("The right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law." (quotation omitted)). Three such procedural rules—Federal Rules of Civil Procedure 8(a)(2), 10(b), and 12(b)—are relevant here.

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To state a claim upon which relief may be granted, a complaint "must contain . . . a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). Therefore, to satisfy Rule 8(a)(2) and survive a Rule 12(b)(6) challenge, the factual allegations in the complaint must "state a claim to relief that is

plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not do. *Iqbal*, 556 U.S. at 678. Instead, "[a] complaint is plausible on its face when it contains sufficient facts to support a reasonable inference that the defendant is liable for the misconduct alleged," *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018), meaning that the allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678. To meet this standard, the facts alleged in the complaint must show more than "a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556); *see Owens v. Sec'y, Fla. Dep't of Corr.*, 602 F. App'x 475, 477 (11th Cir. 2015) (explaining that even a pro se complaint "must allege factual allegations that raise a right to relief above the speculative level" (quotation omitted)).

Further, Federal Rule of Civil Procedure 10(b) requires the plaintiff to "state [his] claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). To "promote clarity," Rule 10(b) also requires the plaintiff to state, "each claim founded on a separate transaction or occurrence . . . in a separate count." *Id.* "Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). Shotgun pleadings "fail . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323.

## ANALYSIS

The court first analyzes whether the amended complaint is a shotgun pleading. *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1275 (11th Cir. 2006) (noting that district courts have an obligation to sua sponte order repleading of shotgun pleadings). The court then considers whether any of Plaintiff's causes of action state a plausible claim for relief.

### A. Shotgun Pleading

The Eleventh Circuit has identified four categories of shotgun pleadings. *See Weiland*, 792 F.3d at 1321. The amended complaint implicates at least three categories. (*See* Dkt. 11.) To begin, each count "adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland*, 792 F.3d at 1321; *see Smith v. Bos. Sci. Corp.*, No. 3:21-CV-815-MMH-JRK, 2021 WL 11132751, at *1 (M.D. Fla. Aug. 27, 2021) (striking a complaint as a shotgun pleading where each count stated that "[the p]laintiff realmlege[d] and incorporate[d] by reference each and every allegation of th[e] [c]omplaint as if each were set forth fully and completely [t]herein"). (*See* Dkt. 11 ¶¶ 29, 34, 39, 44, 50, 54, 58, 61, 66, 70, 74, 77, 81, 86.) Notably, Plaintiff's initial complaint was more selective when incorporating preceding allegations, as each claim adopted only the factual allegations preceding Plaintiff's causes of action. (*See* Dkt. 1 ¶¶ 34, 37, 41, 44, 46, 50, 52.) Even still, the initial complaint's attempt to incorporate every factual allegation into each cause of action rendered that complaint

a shotgun pleading, as each claim included factual allegations "that could not possibly be material to that specific count." *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001). It is not enough to limit each count's incorporation to all facts pleaded in the amended complaint; Plaintiff must clearly identify which facts apply to each claim and then tie those factual allegations to the elements of the cause of action so that Defendant and the court can understand how the right asserted in that count was violated. *See Weiland*, 792 F.3d at 1320 (noting that pleadings must be drafted with sufficient specificity that "the court can determine which facts support which claims" (quotation omitted)); *Mikov v. Village of Palm Springs*, No. 23-13311, 2024 WL 3178043, at *3 (11th Cir. June 26, 2024) (affirming a dismissal without prejudice on shotgun pleading grounds when the complaint "made it overly [burdensome] to identify which facts support[ed] each claim"); *Barreth v. Reyes 1, Inc.*, No. 5:19-CV-00320-TES, 2020 WL 4370137, at *9 (M.D. Ga. July 29, 2020) (explaining that a plaintiff must clearly connect his factual allegations and his alleged causes of action). For this reason, the amended complaint is a shotgun pleading.

The amended complaint is also a shotgun pleading because it contains "conclusory, vague, and immaterial facts." *See Weiland*, 792 F.3d at 1322. For example, a central component of the amended complaint is a purportedly surreptitious recording, which Plaintiff repeatedly references but does not describe. (*See* Dkt. 11 ¶¶ 3, 10–13, 15–16, 22, 46–48, 52, 67–68.) Plaintiff also complains that his disciplinary proceedings were "procedurally defective, . . . retaliatory, discriminatorily applied, and infected with conflicts of interest and bias," yet he does not plead facts to support

these allegations. (*See id.* ¶ 4 (emphasis omitted).) These shortcomings are compounded by a lack of factual support for Plaintiff's assertions that Defendant purportedly failed to disclose evidence and to provide him with the kinds of hearings and appellate process that were guaranteed by Defendant's student handbook and Title IX and disability services policies. (*See id.* ¶¶ 15–25.) Simply put, the amended complaint provides little factual content or context from which the court or Defendant may reasonably infer that Defendant violated Plaintiff's rights. As a result, Defendant and the court are left to speculate as to how Defendant supposedly harmed Plaintiff. *See Franklin v. Curry*, 738 F.3d 1246, 1250 (11th Cir. 2013) ("It is important that defendants be apprised of the conduct that forms the basis of the charges against them."); *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008) (stating that a complaint's factual allegations must be enough to raise a right to relief above the speculative level); *see also Weiland*, 792 F.3d at 1323 (observing that the "unifying characteristic of all types of shotgun pleadings is that they fail . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests"). Without sufficient facts to support the conclusory allegations that fill Plaintiff's amended complaint, the court cannot conclude that Plaintiff plausibly stated an entitlement to relief. Therefore, should Plaintiff file a second amended complaint, he must provide sufficient facts to render his claims plausible while still avoiding the inclusion of excessive, tangential, and irrelevant material. *Reyes v. LVNV Funding LLC*, No. 6:25-CV-1225-JSS-NWH, 2026 WL 192452, at *3 (M.D. Fla. Jan. 26, 2026).

The amended complaint is also a shotgun pleading because it does not separate each cause of action into a distinct count. *Weiland*, 792 F.3d at 1323. Specifically, Count XIII alleges that Defendant "deprived [Plaintiff] of liberty and property interests in his education without due process of law," in violation of the Fourteenth Amendment to the United States Constitution and article I, section 9, of the Florida Constitution. (*See id.* ¶¶ 81–85.) That is impermissible. *See Lacayo v. Puerta De Palmas Condo. Ass'n*, 842 F. App'x 378, 383 (11th Cir. 2021) ("[The] second amended complaint . . . was yet another shotgun pleading. It combined state and federal claims within individual counts . . . ."); *Manzini v. Cypress*, 796 F. Supp. 3d 1146, 1161 n.8 (S.D. Fla. 2025) ("[The p]laintiff does not separately delineate the federal and state-law claims in his [a]mended [c]omplaint, which bears many of the hallmarks of a 'shotgun pleading.'"). Plaintiff "may not cram multiple, distinct theories of liability into one claim because each theory is a separate cause of action that must be asserted independently and with corresponding supporting factual allegations." *Miles v. Carnival Corp.*, 767 F. Supp. 3d 1368, 1373 (S.D. Fla. 2025) (quotation omitted). Because Count XIII asserts multiple causes of action, the amended complaint is a shotgun pleading. *See Weiland*, 792 F.3d at 1323.

Finally, the amended complaint is a shotgun pleading because it does not clearly articulate the relief requested in each cause of action. (*See* Dkt. 11 ¶¶ 29–89.) Consequently, it is unclear which causes of action seek damages and which causes of action seek equitable relief. (*See id.* at 19–21.) That, too, is impermissible. *See Ely v. Mobile Cnty. Sch. Bd.*, No. 15-566-KD-M, 2016 WL 3188926, at *8 (S.D. Ala. May 11,

2016) (explaining that in each count, a plaintiff should "clearly articulate the relief requested").  For these reasons, the court dismisses the amended complaint without prejudice as a shotgun pleading.  Other shortcomings merit further discussion.

## B. Stating a Claim

The court next discusses each of Plaintiff's fourteen causes of action.

### 1. Count I

Count I alleges that Defendant violated Title IX when it failed to provide procedurally sound disciplinary hearings, suppressed exculpatory evidence, treated Plaintiff and another male student inconsistently, and refused to accommodate Plaintiff's need for remote academic access following his exclusion from campus.  (*See* Dkt. 11 ¶¶ 13–22, 29–33.)  Defendant contends that Plaintiff has not alleged sufficient facts to state a claim under Title IX because he does not allege that he suffered discrimination because of his sex.  (Dkt. 13 at 4–5.)  In response, Plaintiff argues that the amended complaint "plausibly establish[es] that gender was a motivating factor" in his disciplinary proceedings, as the lack of disciplinary action against another student, "who appears to be male[,] . . .  may reflect a broader pattern or context [of sex discrimination] to be developed in discovery." (*See* Dkt. 31 at 1–3.)

"Title IX bars the imposition of university discipline where gender is a motivating factor in the decision to discipline." *Doe v. Rollins Coll.*, 77 F.4th 1340, 1351 (11th Cir. 2023) (quotation omitted).  To state a claim under Title IX, a plaintiff must allege sufficient facts, which "if true, raise a plausible inference that the university discriminated against the plaintiff on the basis of sex." *Doe v. Samford Univ.*, 29 F.4th

675, 686 (11th Cir. 2022) (alteration adopted and quotation omitted). "[B]ias in favor of an accuser or against an accused" is insufficient. *Doe v. Emory Univ.*, 110 F.4th 1254, 1260 (11th Cir. 2024). Here, Plaintiff claims that Defendant violated Title IX when it failed to provide fair and impartial proceedings. (*See* Dkt. 11 ¶¶ 13–22, 29–33.) Notably, Plaintiff does not complain that Defendant discriminated against him "on the basis of sex." *Samford Univ.*, 29 F.4th at 686. (*See* Dkt. 11.) Accordingly, Plaintiff has not pleaded sufficient facts to state a claim under Title IX, and Count I must be dismissed. *See Samford Univ.*, 29 F.4th at 687–93 (affirming the dismissal of a Title IX claim where the plaintiff did not plead sufficient facts to permit a reasonable inference that the defendant discriminated against him based on his sex).

### 2. Count II

Count II alleges that Defendant violated the Rehabilitation Act when it excluded Plaintiff—an individual with autism spectrum disorder—from educational programs without adequate accommodations. (*See* Dkt. 11 ¶¶ 2, 8, 19–22, 34–38.) "The Rehabilitation Act prohibits any program or activity that receives federal financial assistance . . . from discriminating against any otherwise qualified individual with a disability . . . *solely by reason of . . . his disability*." *Goldberg v. Fla. Int'l Univ.*, 838 F. App'x 487, 491 (11th Cir. 2020) (emphasis added and quotation omitted). A plaintiff cannot state a claim under the Rehabilitation Act unless he pleads facts that demonstrate that the adverse action was taken "solely by reason of" his disability. *Id.*; *see J.A.M. v. Nova Se. Univ., Inc.*, 646 F. App'x 921, 927 (11th Cir. 2016) (observing that

- 11 -

a plaintiff failed to state a claim under the Rehabilitation Act because he "did not allege facts demonstrating that [the defendant] dismissed him solely by reason of his disability" (alteration adopted and quotation omitted)); *Harrison v. Sheriff, Holmes Cnty. Fla.*, No. 22-14288, 2024 WL 449374, at *4 (11th Cir. Feb. 6, 2024) (observing that a plaintiff cannot successfully state a claim under the Rehabilitation Act if the defendant "based the adverse . . . action partially on disability and partially on other factors").

Defendant moves to dismiss Count II, arguing that the allegations in the amended complaint show that Plaintiff's request for accommodations was denied because of his suspension, and not because of his disability. (*See* Dkt. 13 at 6–7.) As Defendant observes, Plaintiff does not allege that he was banned from campus or denied access to academic services on account of his autism spectrum disorder, but instead claims that these actions coincided with Defendant's investigation into alleged acts of "dating violence and retaliation." (*See* Dkt. 11 ¶¶ 2, 8, 15–16, 19–22, 34–38.) Given that Plaintiff has not pleaded facts to plausibly suggest that Defendant denied his request for accommodations solely because of his autism spectrum disorder, Count II must be dismissed. *See J.A.M.*, 646 F. App'x at 927 (affirming the dismissal of a Rehabilitation Act claim because the plaintiff did not allege facts demonstrating that he was refused accommodations solely because of his disability).

### 3. Count III

Count III alleges that Defendant violated the ADA when it banned Plaintiff from campus and denied his request for accommodations. (*See* Dkt. 11 ¶¶ 39–43.) The ADA covers several categories of discrimination. *See A.L. v. Walt Disney Parks &*

- 12 -

*Resorts U.S., Inc.*, 900 F.3d 1270, 1289 (11th Cir. 2018). Relevant here, "Title II prohibits discrimination by public entities," while "Title III prohibits discrimination by a place of public accommodation, which is a private entity that offers commercial services to the public." *Id.* (quotation omitted). The amended complaint does not state whether Plaintiff is proceeding under Title II or Title III. (*See* Dkt. 11 ¶¶ 39–43.) Ultimately, this shotgun pleading deficiency makes little difference, as both sections impose a but-for liability standard, and the amended complaint does not allege sufficient facts to suggest that Plaintiff experienced discrimination on account of his disability. (*See id.* ¶¶ 2, 8, 15–16, 19–22, 39–43.) *See Goldberg*, 838 F. App'x at 492 (explaining that a plaintiff must show that he "was subjected to unlawful discrimination *because of his disability*" to state a claim under Title II (emphasis added)); *J.A.M.*, 646 F. App'x at 926 (observing that a plaintiff must show that he was denied the "full and equal enjoyment of the . . . services . . . of [the defendant] . . . *on the basis of* [his] disability" to succeed under Title III (emphasis added and quotation omitted)). As discussed in connection with Count II, Plaintiff has not pleaded facts to plausibly suggest that Defendant denied his request for accommodations because of his autism spectrum disorder. (*See* Dkt. 11 ¶¶ 2, 8, 15–16, 19–22, 39–43.) Accordingly, Count III must be dismissed. *See J.A.M.*, 646 F. App'x at 926 (affirming the dismissal of a Title III claim because the plaintiff did not allege facts demonstrating that he was refused accommodations because of his disability); *Bircoll v. Miami-Dade County*, 480 F.3d 1072, 1083–88 (11th Cir. 2007) (affirming the dismissal of a Title II claim when the

plaintiff did not allege facts demonstrating that he was refused accommodations by reason of his disability).

### 4. Count IV

Count IV alleges that Defendant violated the Federal Wiretap Act when it "knowingly accepted, transcribed, used, and disclosed" a secret recording of Plaintiff's oral communications with another student in his disciplinary hearings. (*See* Dkt. 11 ¶¶ 3, 10–13, 15–18, 24–25, 44–49.)   Defendant contends that the amended complaint fails to state a claim because "[t]he Federal Wiretap Act is known as a one-party consent law," and the student who purportedly intercepted the oral communication was a party to the conversation being recorded. (Dkt. 13 at 8–9; *see* Dkt. 11 ¶ 10 (alleging that another student "secretly recorded a conversation with [Plaintiff] in a campus gazebo, using a concealed mobile phone" (emphasis omitted)).) Plaintiff responds that because the recording was made without his knowledge, it is "not a mere party-to-party consent interception" and thus violates the Federal Wiretap Act. (Dkt. 31 at 7–8.)

Plaintiff's argument does not find support in the statute's text, which clearly states that "[i]t shall not be unlawful . . . for a person not acting under color of law to intercept a[n] . . . oral . . . communication where such person is a party to the communication." 18 U.S.C. § 2511(2)(d).  Further, the Act limits protection to oral communications for which a speaker has a reasonable expectation of privacy. 18 U.S.C. § 2510(2) (defining oral communication to mean "any oral communication uttered by a person exhibiting an expectation that such communication is not subject

to interception under circumstances justifying such expectation"); *see United States v. McKinnon*, 985 F.2d 525, 527 (11th Cir. 1993) ("[T]he statutory and constitutional test is whether a reasonable or justifiable expectation of privacy exists."). According to the amended complaint, Plaintiff was purportedly recorded while speaking "in a campus gazebo." (Dkt. 11 ¶ 10 (emphasis omitted).)  Given the brevity of the pleading (*see id.* ¶¶ 1–28), Plaintiff has not shown that he possessed an expectation of privacy in the communications at issue or that such an expectation was justified under the circumstances.  As the amended complaint does not plead sufficient facts to plausibly state a claim under the Federal Wiretap Act, Count IV must be dismissed.  *See Lucas v. Fox News Network, LLC*, 248 F.3d 1180 (11th Cir. 2001) (affirming the dismissal of a Federal Wiretap Act claim because the defendant was a party to the communication being taped).

### 5.  Count V

Count V alleges that Defendant violated the Florida Security of Communications Act when it "knowingly used and disseminated" the purportedly surreptitious recording of Plaintiff's oral communications with another student in his disciplinary hearings. (*See id.* ¶¶ 51–52.)  Like the Federal Wiretap Act, the Florida Security of Communications Act only protects conversations for which a speaker can demonstrate "an actual subjective expectation of privacy, along with a societal recognition that the expectation is reasonable." *Migut v. Flynn*, 131 F. App'x 262, 265 (11th Cir. 2005) (citing *State v. Inciarrano*, 473 So. 2d 1272, 1275 (Fla. 1985)).  "A

significant factor used in determining the reasonableness of the [speaker's] expectation of privacy in a conversation is the location in which the conversation or communication occurs." *Id.* (quotation omitted). Although Florida courts have rejected the proposition that "conversations occurring in public areas can never be made with an expectation of privacy," *id.* (emphasis omitted), the allegations within the amended complaint do not show that Plaintiff possessed a "subjective expectation of privacy" in the communications at issue here. *See Brevard Extraditions, Inc. v. Fleetmatics, USA, LLC*, No. 8:12-CV-2079-T-17MAP, 2013 WL 5437117, at *4–5 (M.D. Fla. Sept. 27, 2013). (*See* Dkt. 11 ¶¶ 10–11, 51–52.) Nor do they suggest that society would consider such an expectation to be "reasonable under the circumstances." *See Brevard Extraditions, Inc.*, 2013 WL 5437117, at *4. (*See* Dkt. 11 ¶¶ 10–11, 51–52.) Instead, the amended complaint merely alleges that the recording was made without Plaintiff's knowledge or consent. (*See* Dkt. 11 ¶¶ 10–11.) That alone is not sufficient to state a claim. *See Migut*, 131 F. App'x at 265. Accordingly, Count V must be dismissed. *See McDonough v. Fernandez-Rundle*, 862 F.3d 1314, 1319–21 (11th Cir. 2017) (holding that a conversant did not violate the Florida Security of Communications Act by recording a conversation in which the other party did not "exhibit any expectation of privacy").

### 6. **Count VI**

Count VI alleges that Defendant breached a series of agreements between the parties when it failed to provide procedurally sound disciplinary hearings and refused

to accommodate Plaintiff's disability following his exclusion from campus. (*See* Dkt. 11 ¶¶ 15–25, 54–57.) To state a claim for breach of contract in Florida, Plaintiff must "plead and establish" three elements: (1) "the existence of a contract," (2) "a material breach of that contract," and (3) "damages resulting from the breach." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009). In Florida, "the legal relationship between a private university and a student is solely contractual in character," and the terms of that contract "may be derived from university publications such as the student handbook and catalog." *Sirpal v. Univ. of Mia.*, 509 F. App'x 924, 929 (11th Cir. 2013) (quotation omitted). Still, "a claim for breach of contract must identify the actual terms of the contract allegedly breached." *Toca v. Tutco, LLC*, 430 F. Supp. 3d 1313, 1324 (S.D. Fla. 2020) (quotation omitted); *see Est. of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1358 (11th Cir. 2020) (concluding that a complaint that "only generally asserted a breach of contract, without identifying any provisions or any specific agreements that were breached, . . . was insufficient to state a claim because [the plaintiff] ha[d] not alleged any general or specific provision of any contract that [the defendant] might have breached" (quotations omitted)); *Hearn v. Int'l Bus. Machs.*, 588 F. App'x 954, 957 (11th Cir. 2014) (concluding that a plaintiff failed to state a claim for breach of contract under Florida law when she generally alleged the defendant had breached the parties' agreement without identifying relevant terms or explaining how the defendant's conduct amounted to a material breach).

Here, Defendant contends that the amended complaint fails to state a claim for breach of contract, as Plaintiff has not attached the Student Handbook, Title IX Policy,

or Disability Services Policy, nor identified which provisions of those documents Defendant purportedly breached. (Dkt. 13 at 10–11.) Plaintiff concedes that he did not attach the relevant documents to his amended complaint. (*See* Dkt. 31 at 11.) Nevertheless, he contends that Count VI sufficiently states a claim for breach of contract, as it "identifie[s] the essential terms [of those documents] and [describes] how they were breached." (*Id.* at 11–12.) Not so. Although Plaintiff clearly expresses his displeasure with Defendant's procedures for conducting disciplinary proceedings and deciding requests for accommodations, he does not identify any terms of the parties' agreements that Defendant purportedly breached. (*See* Dkt. 11.) As a result, Plaintiff has not pleaded sufficient facts to plausibly state a claim for breach of contract. *See Herssein L. Grp. v. Reed Elsevier, Inc.*, 594 F. App'x 606, 608 (11th Cir. 2015) ("It is a basic tenet of contract law that a party can only advance a claim of breach of written contract by identifying . . . the actual terms of the contract allegedly breached." (quotation omitted)); *City of Delray Beach v. Sherman Williams Am. Legion, Post 188*, 358 So. 3d 440, 443 (Fla. Dist. Ct. App. 2023) ("[A] well-[pleaded] complaint alleging breach of a written contract must . . . make allegations as to which contractual provisions were breached."). Consequently, Count VI must be dismissed. *See Adkins v. Cagle Foods JV, LLC*, 411 F.3d 1320, 1327 (11th Cir. 2005) (affirming the dismissal of a complaint that did not identify a contractual provision that the defendant had purportedly breached).

### 7. Count VII

Count VII alleges that Defendant breached the implied covenant of good faith and fair dealing when it did not provide Plaintiff with procedurally sound disciplinary hearings and refused to accommodate his disability. (*See* Dkt. 11 ¶¶ 58–60.) "Under Florida law, every contract contains an implied covenant . . . requiring that the parties follow standards of good faith and fair dealing designed to protect the parties' reasonable contractual expectations." *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1151 (11th Cir. 2005). A party to a contract breaches the implied covenant of good faith and fair dealing when it "fail[s] or refus[es] to discharge contractual responsibilities" through "conscious and deliberate" action that "unfairly frustrates the [parties'] agreed common purpose," thereby "disappoint[ing] the reasonable expectations of the other party" to the contract. *Tiara Condo. Ass'n v. Marsh & McLennan Cos.*, 607 F.3d 742, 747 (11th Cir. 2010) (quotation omitted). To state a claim, a plaintiff must "establish a term of the contract the other party was obligated to perform and did not." *Perry v. Schumacher Grp. of La.*, 809 F. App'x 574, 583 (11th Cir. 2020) (quoting *Snow v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 896 So. 2d 787, 792 (Fla. Dist. Ct. App. 2005)).

Defendant moves to dismiss Count VII because Plaintiff has not identified the specific contractual obligations that it allegedly breached. (Dkt. 13 at 11–12.) As Defendant indicates, "[a] breach of the implied covenant of good faith and fair dealing is not an independent cause of action, but attaches to the performance of a specific contractual obligation." *Centurion Air Cargo*, 420 F.3d at 1151. Accordingly, "a claim

for a breach of the implied covenant of good faith and fair dealing cannot be maintained under Florida law in the absence of a breach of an express term of a contract." *Id.* at 1152. As before, Plaintiff argues that Count VII states a claim for relief because the amended complaint sufficiently alleges the contractual provisions that Defendant purportedly breached. (*See* Dkt. 31 at 13–14.) Again, the court must disagree. Because Plaintiff has not identified the relevant terms, Count VII fails to indicate the contractual obligations to which the implied covenant of good faith and fair dealing would attach. (*See* Dkt. 11 ¶¶ 3–4, 17, 21, 58–60.) *See Friedel v. Sun Cmtys., Inc.*, No. 20-12275, 2021 WL 3732992, at *4 (11th Cir. Aug. 24, 2021) (concluding that the plaintiffs failed to state a claim for breach of the implied duty of good faith and fair dealing because they did not identify the specific contractual obligation to which the implied covenant would attach). Accordingly, Count VII must be dismissed.

### 8. Count VIII

Count VIII alleges that Defendant abused its Title IX process to coerce Plaintiff into withdrawing from school. (*See* Dkt. 11 ¶¶ 61–65.) To state a claim for abuse of process, a plaintiff must allege that "(1) the defendant made an illegal, improper, or perverted use of process[,] (2) the defendant had an ulterior motive or purpose in exercising the illegal, improper[,] or perverted process[,] and (3) the plaintiff was injured as a result of [the] defendant's action." *EMI Sun Vill., Inc. v. Catledge*, 779 F. App'x 627, 634–35 (11th Cir. 2019) (quotation omitted). Under Florida law, an abuse of process refers to a defendant's "use of [the] criminal or civil legal process . . . to

- 20 -

accomplish a purpose for which it was not designed." *In re Fundamental Long Term Care, Inc.*, 873 F.3d 1325, 1346 (11th Cir. 2017) (alteration adopted and quotation omitted); *accord Whitney Info. Network, Inc. v. Gagnon*, 353 F. Supp. 2d 1208, 1212 (M.D. Fla. 2005) ("Under Florida law, abuse of process involves the use of criminal or civil legal process against another primarily to accomplish a purpose for which it was not designed."); *see Litchford & Christopher Pro. Ass'n v. Legal Video Servs., Inc.*, No. 6:08-CV-893-ORL-DAB, 2008 WL 4093697, at *3 (M.D. Fla. Aug. 29, 2008) (explaining that in Florida, "abuse of process is only concerned with the improper use by a private party of process after it is issued properly through judicial procedure"); *Verdon v. Song*, 251 So. 3d 256, 258 (Fla. Dist. Ct. App. 2018) ("Although abuse of process and malicious prosecution are two separate and distinct torts, *they have the common element of an improper purpose in the use of legal process*, and there are many cases in which they overlap and either will lie." (emphasis added and quotation omitted)); *McMurray v. U-Haul Co.*, 425 So. 2d 1208, 1209 n.1 (Fla. Dist. Ct. App. 1983) ("An abuse of process arises *only when there has been a perversion of court processes* to accomplish some end which the process was not intended by law to accomplish, or which compels the party against whom it has been used to do some collateral thing which he could not legally and regularly be compelled to do." (emphasis added and quotation omitted)). Accordingly, "[a] claim for abuse of process relies upon the *use of the courts* by private parties." *Litchford & Christopher Pro. Ass'n*, 2008 WL 4093697, at *3 (emphasis added, alteration adopted, and quotation omitted).

Defendant argues that Plaintiff cannot satisfy the first element of his claim, as the amended complaint does not allege that Defendant "abused the civil legal process" but complains that Defendant misused its internal disciplinary procedures. (Dkt. 13 at 12–13.) Although Plaintiff acknowledges that a cause of action for abuse of process "traditionally applie[s] to court proceedings," he contends that such a claim can "extend to [the] misuse of quasi-judicial or administrative processes." (Dkt. 31 at 15–16.) Plaintiff cites no authority for this proposition, thereby waiving the argument. *See United States v. Markovich*, 95 F.4th 1367, 1379 (11th Cir. 2024) (concluding that a party forfeited arguments that were not supported by legal authority). In any event, case law does not support Plaintiff's attempt to extend the tort of abuse of process to private disciplinary proceedings. *See In re Fundamental Long Term Care*, 873 F.3d at 1346; *Litchford & Christopher*, 2008 WL 4093697, at *3. Because Plaintiff has not alleged that Defendant misused the criminal or civil legal process to accomplish a purpose for which that process was not designed, he has not stated a claim for abuse of process. Accordingly, Count VIII must be dismissed.

### 9. Count IX

Count IX alleges that Defendant violated Plaintiff's right to privacy when it "knowingly used and disseminated" the purportedly surreptitious recording of Plaintiff's oral communications with another student in connection with his disciplinary proceedings. (Dkt. 11 ¶¶ 66–69.) Florida recognizes a cause of action for invasion of privacy, *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1315 (11th Cir. 1989), which consists of three distinct torts: (1) intrusion upon the seclusion of another,

(2) commercial appropriation of one's name or likeness, and (3) publication of private facts, *see Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1102 (Fla. 2008). The amended complaint does not state which variation of the tort Plaintiff is advancing, which raises an additional shotgun pleading concern. (*See* Dkt. 11 ¶¶ 66–69.) Regardless, Plaintiff has not pleaded sufficient facts to state a claim under any variation.

Under Florida law, intrusion upon the seclusion of another occurs "where a person intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns if the intrusion would be highly offensive to a reasonable person." *Jackman v. Cebrink-Swartz*, 334 So. 3d 653, 656 (Fla. Dist. Ct. App. 2021) (alteration adopted and quotation omitted); *see Pet Supermarket, Inc. v. Eldridge*, 360 So. 3d 1201, 1206 (Fla. Dist. Ct. App. 2023) ("[A]n invasion of privacy by intrusion requires 'physically or electronically intruding into one's private quarters.'" (quoting *Allstate Ins. Co. v. Ginsberg*, 863 So. 2d 156, 162 (Fla. 2003)). The tort addresses the "intrusion into a place in which there is a reasonable expectation of privacy." *Pet Supermarket*, 360 So. 3d at 1206 (quotations omitted); *see Spilfogel v. Fox Broad. Co.*, 433 F. App'x 724, 727 (11th Cir. 2011) ("Florida law explicitly requires an intrusion into a private place and not merely into a private activity."). Because the amended complaint alleges that another student "secretly recorded a conversation" that took place "in a campus gazebo," (Dkt. 11 ¶ 10), Plaintiff has not pleaded facts to plausibly suggest that Defendant intruded upon his seclusion, *see Spilfogel*, 433 F. App'x at 726 ("Because the alleged facts state that the recording occurred on a public

street, [the plaintiff] has not [pleaded] facts adequate for a finding that [the defendants] intruded upon her seclusion.").

Next, the commercial appropriation variety of the invasion of privacy tort has the same elements as a violation of section 540.08, Florida Statutes. *See Coton v. Televised Visual X-Ography, Inc.*, 740 F. Supp. 2d 1299, 1310 & n.7, 1313 (M.D. Fla. 2010). Thus, it generally prohibits "publish[ing], print[ing], display[ing,] or otherwise publicly us[ing] for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use given by [such person]" and which "requir[es] that the unauthorized use . . . directly promote [a] product." *Id.* at 1310 (quotation omitted); *see Tyne v. Time Warner Ent. Co., L.P.*, 901 So. 2d 802, 807 (Fla. 2005) (explaining that the "name[], likeness, and other indicia of a person's identity are used 'for the purposes of trade' . . . if they are used in advertising the [defendant's] goods or services, or are placed on merchandise marketed by the [defendant], or are used in connection with services rendered by the [defendant]."). Because the amended complaint does not allege that Defendant disseminated the recorded conversation to promote a product or service, Plaintiff has not pleaded facts to plausibly suggest that Defendant violated his right to privacy by misappropriating his name or likeness for a commercial or advertising purpose.

Finally, to state a claim for publication of private facts, a plaintiff must allege (1) the publication, (2) of private facts, (3) that are offensive, and (4) are not of public concern. *Spilfogel*, 433 F. App'x at 725. To satisfy the first element, Plaintiff must

allege that Defendant published his private facts "to the public in general or to a large number of persons." *Steele*, 867 F.2d at 1315; *see Allstate Ins. Co.*, 863 So. 2d at 160 ("Plainly, the focus of the tort was the holding up of information about a person for 'public gaze.'"); *Williams v. City of Minneola*, 575 So. 2d 683, 689 (Fla. Dist. Ct. App. 1991) ("[T]he publicity given to private facts must be to the public at large or to so many persons that the matter must be regarded as substantially certain to become public knowledge."). To satisfy the third element, Plaintiff must show that the alleged invasion of privacy was of such a magnitude that Defendants "should have known that [the] publication [of Plaintiff's comments] would offend the sensibilities of a normal person." *See Jacova v. S. Radio & Television Co.*, 83 So. 2d 34, 39 (1955) (quotation omitted). The amended complaint does not satisfy either element.

To begin, Plaintiff does not plead facts to suggest that the recording was circulated to the public or even "a large number of persons." *Steele*, 867 F.2d at 1315; *see Allstate Ins. Co.*, 863 So. 2d at 160. The amended complaint alleges that Defendant "circulated the audio file among [its] administrators," yet only three administrators are mentioned in connection with Plaintiff's disciplinary proceedings. (*See* Dkt. 11 ¶¶ 13, 18–20, 78.) The amended complaint also lacks sufficient facts to plausibly suggest that the purported publication of Plaintiff's comments would "offend the sensibilities of a normal person." *See Jacova*, 83 So. 2d at 39. Indeed, Plaintiff does not provide any details concerning the recorded conversation's content, nor does he identify any offensive facts that are contained therein. (*See* Dkt. 11 ¶¶ 10–13, 25, 66–69.) Instead, Plaintiff contends that the third element is satisfied because "[t]he recording was *made*

*and used* in a manner highly offensive to a reasonable person and without any lawful justification," (*id.* ¶ 68 (emphasis added)), which he believes suggests that "the disclosed facts were private and offensive," (*see* Dkt. 31 at 18). As a result, the amended complaint does not plausibly suggest that Defendant published Plaintiff's private facts to a large number of persons. *See Spilfogel*, 433 F. App'x at 725–26. Because the amended complaint fails to state a claim for invasion of privacy upon which relief can be granted, Count IX must be dismissed. *See id.* (affirming the dismissal of a complaint alleging that the defendants invaded the plaintiff's privacy by publicly disclosing private facts and intruding upon her seclusion, as the amended complaint alleged that the recorded conversation took place in public and further failed to show that the recording's publication would be offensive to a reasonable person).

### 10. Count X

Count X alleges that Defendant negligently administered its disciplinary and educational policies. (Dkt. 11 ¶¶ 70–73.) Defendant argues that Plaintiff has not stated a claim for negligence because "Plaintiff has brought a breach of contract claim arising under the same facts as his negligence claim." (Dkt. 13 at 14–15.) "Under Florida law, no cause of action in tort can arise from a breach of a duty existing by virtue of contract." *Kelly v. Lee Cnty. RV Sales Co.*, 819 F. App'x 713, 718 (11th Cir. 2020) (quotation omitted). "The independent tort doctrine precludes a party from using a purely contractual duty to manufacture a duty in tort that would not otherwise exist. An independent tort, therefore, is one based on breach of a duty that exists independently of the parties' contract." *Simmons v. USI Ins. Servs., LLC*, No. 8:23-CV-

201-TPB-AAS, 2024 WL 946287, at *3 (M.D. Fla. Mar. 5, 2024) (quotation omitted); *see MidAmerica C2L Inc. v. Siemens Energy Inc.*, No. 24-10678, 2025 WL 1807982, at *9 (11th Cir. July 1, 2025) ("Florida's independent tort doctrine provides that a plaintiff may not recover in tort for a contract dispute unless the tort is independent of any breach of contract." (quotation omitted)); *Christie v. Royal Caribbean Cruises, Ltd.*, 497 F. Supp. 3d 1227, 1232 (S.D. Fla. 2020) (explaining that the independent tort doctrine "prevents a party from seeking recovery in tort for what is actually a breach of contract claim"); *Tiara Condo. Ass'n v. Marsh & McLennan Cos.*, 110 So. 3d 399, 408 (Fla. 2013) (Pariente, J., concurring) ("[T]o bring a valid tort claim, a party still must demonstrate that all of the required elements for the cause of action are satisfied, including that the tort is independent of any breach of contract claim."); *Costa Invs., LLC v. Liberty Grande, LLC*, 353 So. 3d 627, 632 (Fla. Dist. Ct. App. 2022) ("The independent tort doctrine is a general principle of law that provides a plaintiff may not recover in tort for a contract dispute unless the tort is independent of any breach of contract." (quotation omitted)).  Accordingly, "[a] plaintiff bringing both a breach of contract and a tort claim must allege, in addition to the breach of contract, some other conduct amounting to an independent tort." *Bedoyan v. Samra*, 352 So. 3d 361, 366 (Fla. Dist. Ct. App. 2022) (quotation omitted); *see Floyd v. Video Barn, Inc.*, 538 So. 2d 1322, 1324 (Fla. Dist. Ct. App. 1989) ("Florida law is clear that when a breach of contract is attended by some additional conduct which amounts to an independent tort, such a breach can constitute negligence." (collecting cases)); *Elec. Sec. Sys. Corp. v. S. Bell Tel. & Tel. Co.*, 482 So. 2d 518, 519 (Fla. Dist. Ct. App. 1986) ("Since a breach of contract, alone,

cannot constitute a cause of action in tort, the trial court properly dismissed the negligence count. It is only when the breach of contract is attended by some additional conduct which amounts to an independent tort that such breach can constitute negligence." (citations omitted)).

Count X states that Defendant owed Plaintiff "a duty to act with reasonable care in the administration of its disciplinary and educational policies" and that Defendant breached this duty "by failing to conduct individualized risk assessments, suppressing evidence, and allowing conflicts of interest." (Dkt. 11 ¶¶ 71–72.) Count VI similarly alleges that Defendant breached the parties' agreements when it denied Plaintiff certain procedural processes, refused his request for accommodations, failed "to follow required evidence disclosure procedures," and ignored conflict of interest rules. (*Id.* ¶¶ 55–56.) Although Plaintiff's allegations concerning his disciplinary proceedings are conclusory, (*see id.* ¶¶ 1–28), it appears that his concerns regarding the perceived lack of individualized proceedings free from conflicts of interest, at which he could provide a more holistic picture of the evidence, emanates from his understanding of the procedures guaranteed by the Student Handbook, Title IX Policy, and Disability Services Policy, (*see id.* ¶¶ 56, 72). Accordingly, Plaintiff has not alleged that Defendant breached a duty apart from those that purportedly arise from the parties' agreements. (*See id.* ¶¶ 55–56, 71–72.) Because the amended complaint does not allege an independent tort, Count X must be dismissed. *See Elec. Sec. Sys. Corp.*, 482 So. 2d at 519 (affirming the dismissal of a negligence claim that derived its

duty from the parties' contract and was therefore "based solely on the breach of contract claim").

## 11. Count XI

Count XI alleges an IIED claim. According to the amended complaint, Defendant engaged in extreme and outrageous conduct when it denied Plaintiff's request for accommodations, used the recorded conversation in Plaintiff's disciplinary proceedings, and ultimately removed Plaintiff from school. (Dkt. 11 ¶¶ 74–76.) "Florida has adopted [section] 46 of the Restatement (Second) of Torts as the appropriate standard for IIED claims." *Lopez v. Target Corp.*, 676 F.3d 1230, 1236 (11th Cir. 2012) (citing *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278–79 (Fla. 1985)). "Section 46 states that 'one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability.'" *Id.* (alteration adopted) (quoting Restatement (Second) of Torts § 46). The Eleventh Circuit has explained:

> [L]iability for IIED [under Florida law] requires that the conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Id.* (alteration adopted and quotation omitted).

"The standard for 'outrageous conduct' is particularly high in Florida." *Patterson v. Downtown Med. & Diagnostic Ctr., Inc.*, 866 F. Supp. 1379, 1383 (M.D. Fla.

1994) (citing *Golden v. Complete Holdings, Inc.*, 818 F. Supp. 1495, 1499 (M.D. Fla. 1993)). "A complaint fails to state a claim for IIED if it contains merely conclusions, as opposed to facts supporting each element of an IIED cause of action." *Jones v. Lamar Co., LLC*, No. 8:23-CV-1461-CEH-AAS, 2024 WL 3771689, at *8 (M.D. Fla. Aug. 13, 2024). Here, Defendant contends that Count XI must be dismissed, as Plaintiff "does not allege facts to permit the reasonable inference" that the alleged conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." (Dkt. 13 at 16 (quotation omitted).) Plaintiff alleges that Defendant's conduct in connection with his disciplinary proceedings and its decision to deny his subsequent request for accommodations were both extreme and outrageous; however, his conclusory allegations do not plausibly suggest that Defendant's conduct surpassed "all possible bounds of decency" such that they were atrocious and "utterly intolerable in a civilized community." *See Lopez*, 676 F.3d at 1236 (quotation omitted). (Dkt. 11 ¶¶ 1–28.) Because Plaintiff has not met the high standard for stating an IIED claim, Count XI must be dismissed. *See Dowling v. Blue Cross of Fla., Inc.*, 338 So. 2d 88, 88–89 (Fla. Dist. Ct. App. 1976) (affirming the dismissal of an IIED claim, alleging that the plaintiffs' employer failed to properly investigate the purportedly false allegations that the plaintiffs had engaged in same-sex intercourse at work before terminating their employment).

### 12. Count XII

Count XII alleges that several of Defendant's administrators "conspired to deprive [Plaintiff] of his rights under federal and state law." (Dkt. 11 ¶¶ 77–80.)  "In Florida, a civil conspiracy requires" four elements: (1) "an agreement between two or more parties," (2) "to do an unlawful act or to do a lawful act by unlawful means," (3) "the doing of some overt act in pursuance of the conspiracy," and (4) "damage to plaintiff as a result of the acts done under the conspiracy."  *Eagletech Commc'ns, Inc. v. Bryn Mawr Inv. Grp., Inc.*, 79 So. 3d 855, 863 (Fla. Dist. Ct. App. 2012) (alteration adopted and quotation omitted); *see Kee v. Nat'l Rsrv. Life Ins. Co.*, 918 F.2d 1538, 1541 (11th Cir. 1990) ("Civil conspiracy under Florida law requires a showing that two or more persons have taken concerted action to accomplish some unlawful purpose, or to accomplish some lawful purpose by unlawful means.").  Defendant argues that Count XII should be dismissed because Plaintiff has not pleaded sufficient facts to support any of these elements.  (*See* Dkt. 13 at 17.)

To satisfy the first element of his conspiracy claim, Plaintiff must show that Defendant's administrators expressly or impliedly agreed "to engage in a criminal or unlawful act."  *City of Miami v. Alvarez*, 421 So. 3d 802, 806 (Fla. Dist. Ct. App. 2025) (quotation omitted).  "[A] defendant must be informed of the nature of the conspiracy [that] is alleged.  It is not enough to simply aver in the complaint that a conspiracy existed."  *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984); *see Raske v. Dugger*, 819 F. Supp. 1046, 1053 (M.D. Fla. 1993) (observing that in conspiracy actions, "conclusory, vague, and general allegations of conspiracy may justify dismissal of a

complaint" because a defendant "must be informed of the nature of the conspiracy which is alleged"); *Jia v. Univ. of Mia.*, No. 17-cv-20018-GAYLES, 2019 U.S. Dist. LEXIS 23587, at *21 (S.D. Fla. Feb. 12, 2019) (dismissing a civil conspiracy claim against college administrators that was "supported by conclusory allegations of an agreement to disseminate private and false information [about the p]laintiff and [to] invade his privacy" (alteration adopted and quotation omitted)); *Plastiquim, S.A. v. Odebrecht Constr., Inc.*, 337 So. 3d 1270, 1274 (Fla. Dist. Ct. App. 2022) (explaining that a complaint for civil conspiracy must allege that the co-conspirators "[knew] of the scheme and assist[ed] in it in some way" (quotation omitted)); *Parisi v. De Kingston*, 314 So. 3d 656, 661–62 (Fla. Dist. Ct. App. 2021) (concluding that a plaintiff's conclusory allegations that a conspiracy "unfolded pursuant to an agreement" between the defendants were insufficient to plausibly plead that the defendants agreed to join a conspiracy (alteration adopted and quotation omitted)). Because "[g]eneral allegations of conspiracy are inadequate," a complaint "must set forth clear, positive, and specific allegations of civil conspiracy." *Eagletech Commc'ns*, 79 So. 3d at 863 (quotations omitted); *accord Parisi*, 314 So. 3d at 661 ("[A] claim for civil conspiracy must contain clear, positive[,] and specific allegations; general allegations of conspiracy are not sufficient."); *see ECB USA, Inc. v. Savencia Cheese USA, LLC*, 148 F.4th 1332, 1347 (11th Cir. 2025) (concluding that conspiracy claims could not survive a Rule 12(b)(6) challenge because "[a]lleging that the parties 'agreed' and 'acted in furtherance' of the conspiracy [merely] restates the language of a Florida conspiracy claim" (quotation omitted)).

Here, Plaintiff argues that the allegations within the amended complaint "support an inference of agreement" sufficient to state a claim, as they show that Defendant's administrators "suppress[ed] exculpatory evidence, . . . den[ied his request for] accommodations, and selectively discipline[d]." (Dkt. 31 at 22–23; *see* Dkt. 11 ¶¶ 1–28, 78.) Such conclusory allegations of agreement are insufficient, as they do not inform Defendant of the nature of the alleged conspiracy, *Fullman*, 739 F.2d at 557, nor plausibly suggest that Defendant's administrators agreed to engage in a criminal or unlawful act, *Alvarez*, 421 So. 3d 802. For example, the amended complaint does not connect the dean's decision to deny Plaintiff's appeal from the emergency removal order to the Title IX director's decision to deny Plaintiff's request for accommodations. (*See id.* ¶¶ 15–25, 77–80.) Further, the amended complaint mentions the hearing chair only in passing, without ever explaining his role in the supposed conspiracy. (*See id.* ¶ 78.) Given the nondescript nature of Plaintiff's civil conspiracy claim, Count XII must be dismissed. *ECB USA, Inc.*, 148 F.4th at 1348 (affirming the dismissal of a civil conspiracy claim that "rest[ed] on conclusory and implausible facts").

### 13. Count XIII

Count XIII alleges that Defendant deprived Plaintiff of "liberty and property interests in his education without due process of law," in violation of the Fourteenth Amendment to the United States Constitution and article I, section 9, of the Florida Constitution. (*See* Dkt. 11 ¶¶ 81–85.) "The due process language used in the Florida

and United States Constitutions is virtually identical." *Barrett v. State*, 862 So. 2d 44, 47 (Fla. Dist. Ct. App. 2003). Each clause guarantees that no person shall be deprived "of life, liberty, or property, without due process of law." *See Russell v. Redstone Fed. Credit Union*, 710 F. App'x 830, 832 (11th Cir. 2017) (explaining that the "Due Process Clause of the Fourteenth Amendment provides that no [s]tate shall deprive any person of life, liberty, or property, without due process of law."); *accord Barwick v. State*, 361 So. 3d 785, 790 (Fla. 2023) ("The Florida Constitution similarly provides that no person shall be deprived of life, liberty[,] or property without due process of law." (alterations adopted and quotation omitted)). Through this language, "[t]he Due Process Clause of the United States and Florida Constitutions encompass both substantive and procedural due process." *M.W. v. Davis*, 756 So. 2d 90, 97 (Fla. 2000); *see Lindbloom v. Manatee County*, 808 F. App'x 745, 749 (11th Cir. 2020) ("The Due Process Clause [of the Fourteenth Amendment to the United States Constitution] provides two different kinds of constitutional protections: procedural due process and substantive due process." (quotation omitted)).

Defendant contends that Count XIII should be dismissed because it is a private entity and not a governmental actor. (Dkt. 13 at 17–18.) To be sure, each provision is "restricted solely to wrongs committed by the [s]tate or on behalf of the [s]tate by its agents." *Russell*, 710 F. App'x at 832; *accord Citrus Cnty. Hosp. Bd. v. Citrus Mem'l. Health Found., Inc.*, 150 So. 3d 1102, 1106 (Fla. 2014) (explaining that the rights guaranteed within article I of the Florida Constitution "belong[] to the people . . . as against the government"); *see Smith v. State*, 411 So. 3d 487, 491 (Fla. Dist. Ct. App. 2025) ("The

text of [the] Florida Constitution begins with a Declaration of Rights . . . [that] protect[s] each individual within [Florida's] borders from the unjust encroachment of state authority—from whatever official source—into his or her life." (quotations omitted)).  Accordingly, the rights secured by the Due Process Clauses of the United States and Florida Constitutions "do not apply to private parties unless those parties are engaged in . . . state action."  *See Kinsey v. King*, 257 F. App'x 136, 139 (11th Cir. 2007) (quotations omitted); *accord Lloyd v. Brendemuehl*, 714 So. 2d 1154, 1156 (Fla. Dist. Ct. App. 1998) ("The same 'state action' requirement applies to the due process clause of [the] state constitution.").

Private universities, like Defendant, are generally not considered state actors, *Andela v. Univ. of Mia.*, 461 F. App'x 832, 836 (11th Cir. 2012), and thus are rarely amenable to suit for alleged constitutional violations, *see Jones v. Nova Se. Univ., Inc.*, No. 8:25-CV-121-TPB-AAS, 2025 WL 2230033, at *3 (M.D. Fla. Aug. 5, 2025) ("The Fourteenth Amendment . . . requires state action to support a claim for relief, and it does not apply to private entities like private universities."); *Mancini v. Rollins Coll.*, No. 6:16-cv-2232-ORL-37KRS, 2017 WL 3088102, at *7–8 (M.D. Fla. July 20, 2017) (rejecting a Fifth Amendment claim against a private college).  Consequently, for a plaintiff to adequately allege that a private actor violated his right to due process, he must show that the private actor was acting "under color of law."  *Mancini*, 2017 WL 3088102, at *7.  "A private party may be considered a state actor if [it] conspired with [a government actor] to commit the alleged constitutional violation."  *Pierre v. City of Miramar*, 537 F. App'x 821, 827 (11th Cir. 2013).  To make such a showing, a plaintiff

- 35 -

must generally demonstrate that "there is such a close nexus between the government actor and the challenged action that [the defendant's] seemingly private behavior may be fairly treated as that of the [s]tate itself." *Mancini*, 2017 WL 3088102, at *7 (alteration adopted and quotations omitted).

Plaintiff concedes these points. (*See* Dkt. 31 at 24.) He contends, however, that the amended complaint alleges sufficient facts "to plausibly establish state action through government entanglement." (*Id.* (emphasis omitted).) According to Plaintiff, there is a document demonstrating "substantive interactions and communications between [Defendant] and [the] Winter Park Police[,] concerning Plaintiff's disciplinary matter," which shows that his "disciplinary proceedings were not purely private but involved significant government participation and influence." (*Id.*) The amended complaint does not clearly connect Count XIII with this document. (*See* Dkt. 11.) That is a problem for Plaintiff because "[a] court is generally limited to reviewing what is within the four corners of the complaint on a motion to dismiss." *Austin v. Mod. Woodman of Am.*, 275 F. App'x 925, 926 (11th Cir. 2008) (quotation omitted). While the court may consider a document that is referenced in the amended complaint without converting the motion to dismiss into a motion for summary judgment, it may only do so if the document is central to the plaintiff's claims and is undisputed in terms of authenticity. *Johnson v. City of Atlanta*, 107 F.4th 1292, 1299–1300 (11th Cir. 2024). Without reviewing the document, the court cannot make either determination. In any event, the allegations within the amended complaint suggest that such a document would not be central to Plaintiff's claims, as Plaintiff's sole

reference to the Winter Park Police indicates a lack of coordination between the entities. (*See* Dkt. 11 ¶ 23 (complaining that Defendant failed to obtain the police department's body-worn camera footage and excluded Plaintiff's "full police interview" from the disciplinary proceedings)). At bottom, the amended complaint does not plausibly suggest that Defendant engaged in state action when it purportedly provided Plaintiff with a procedurally defective and unfair disciplinary process. (*See id.* ¶¶ 15–28, 81–85.) *See Farese v. Scherer*, 342 F.3d 1223, 1233 n.13 (11th Cir. 2003) (affirming the dismissal of a plaintiff's due process claims under the Fourteenth Amendment, as the plaintiff did not allege state action, which is a prerequisite for applying the Fourteenth Amendment to private parties). Consequently, Count XIII must be dismissed.

Further, if Plaintiff does file a second amended complaint, he should know that the United States Constitution "does not include a private right of action for civil damages." *Denico v. Fla. State Fair Auth.*, No. 8:12-CV-2933-T-33EAJ, 2013 WL 4848267, at *2 (M.D. Fla. Sept. 10, 2013). Rather, 42 U.S.C. § 1983 "creates a private right of action to vindicate violations of rights, privileges, or immunities secured by the Constitution . . . of the United States." *Rehberg v. Paulk*, 566 U.S. 356, 361 (2012) (quotation omitted). As to Plaintiff's purported cause of action under the Florida Constitution, Florida law does not contain an analogue to section 1983, *see Youngblood v. Fla. Dep't of Health*, 224 F. App'x 909, 913 n.4 (11th Cir. 2007), and violations of state law cannot form the basis of such a claim, *Paul v. Davis*, 424 U.S. 693, 698–99 (1976); *see Knight v. Jacobson*, 300 F.3d 1272, 1276 (11th Cir. 2002) ("Section 1983 does

not create a remedy for every wrong committed under the color of state law, but only for those that deprive a plaintiff of a federal right."). Accordingly, Plaintiff cannot pursue monetary damages for Defendant's alleged violations of the Florida Constitution. *See Corn v. Lauderdale Lakes*, 816 F.2d 1514, 1519 (11th Cir. 1987) (finding "no support for the availability of an action for money damages, based . . . on . . . [a purported] violation of the right of due process, as guaranteed by the Florida Constitution"); *Bradsheer v. Fla. Dep't of Highway Safety & Motor Vehicles*, 20 So. 3d 915, 921 (Fla. Dist. Ct. App. 2009) (explaining that generally, plaintiffs may not obtain monetary damages for constitutional violations but must instead seek declaratory or injunctive relief).

Additionally, it is unclear whether Count XIII asserts a substantive due process claim, a procedural due process claim, or both. (*See* Dkt. 11 ¶¶ 82–85.) This lack of clarity is problematic—posing a shotgun pleading problem—because substantive and procedural due process claims are analyzed under different legal frameworks. Substantive due process, on the one hand, "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (quotation omitted). In this respect, due process protects rights created by the Constitution, primarily those enumerated in the Bill of Rights. *Skinner v. City of Miami*, 62 F.3d 344, 347 (11th Cir. 1995); *see Foley v. Orange County*, 638 F. App'x 941, 944 (11th Cir. 2016) ("Substantive due process protects the rights that are fundamental and implicit in the concept of ordered liberty." (quotation omitted)). Procedural due process, on the other hand, "requires notice and an

- 38 -

opportunity to be heard" when the government deprives a person of a liberty or property interest. *Vinyard v. Wilson*, 311 F.3d 1340, 1356 (11th Cir. 2002) (quotation omitted). In this context, property interests "are not created by the Constitution" but are instead created and defined "by existing rules or understandings that stem from an independent source such as state law." *Id.* (quotation omitted).

To the extent that Plaintiff seeks to allege a substantive due process claim, he has not identified which of his fundamental rights—if any—Defendant purportedly violated. (*See* Dkt. 11 ¶¶ 82–85.) For example, Plaintiff does not contend that Defendant violated his "rights to marry, to have children, . . . to marital privacy, to use contraception, [or] to bodily integrity." *See Doe v. Moore*, 410 F.3d 1337, 1343 (11th Cir. 2005) (identifying liberty interests protected by substantive due process). Instead, Plaintiff vaguely suggests that Defendant deprived him "of liberty and property interests in his education without due process of law," when it purportedly failed to provide procedurally sound disciplinary proceedings. (*See* Dkt. 11 ¶¶ 82–85.) However, students at a public university, let alone a private college, "do not have a fundamental right to continued enrollment." *Doe v. Valencia Coll.*, 903 F.3d 1220, 1235 (11th Cir. 2018) (rejecting the plaintiff's contention that he was "deprived of substantive due process because he had a constitutionally protected right to continued enrollment at [the college], and that right was violated when the school acted in an arbitrary and capricious manner during his disciplinary proceedings"). Plaintiff's failure to identify a constitutionally protected interest is fatal to his claim. *See Littlejohn v. Sch. Bd. of Leon Cnty.*, 132 F.4th 1232, 1239 (11th Cir. 2025) (explaining that to state

a substantive due process claim, a plaintiff must, as an initial step, allege a deprivation of a constitutionally protected interest); *Pouyeh v. UAB Dep't of Ophthalmology*, 625 F. App'x 495, 499 (11th Cir. 2015) (affirming the dismissal of the plaintiff's substantive due process claim because he did not identify a constitutional right that the defendant violated); *Harder v. Hunter*, 572 F. App'x 904, 906 (11th Cir. 2014) ("To avoid dismissal of a [section] 1983 claim, a plaintiff must allege facts showing he was deprived of a constitutional right by a person acting under color of state law."); *see also Moore*, 410 F.3d at 1343–44 ("Although the Supreme Court has recognized fundamental rights in regard to some special liberty and privacy interests, it has not created a broad category where any alleged infringement on privacy and liberty will be subject to substantive due process protection.").

If Plaintiff is attempting to state a procedural due process claim, regarding a purported property interest related to his education, he has not succeeded. To prevail on such a claim, Plaintiff must "prove three elements: (1) a deprivation of a constitutionally[ ]protected property interest[,] (2) state action[,] and (3) constitutionally[ ]inadequate process." *Spencer v. Benison*, 5 F.4th 1222, 1232 (11th Cir. 2021) (alteration adopted and quotation omitted). As discussed, Plaintiff has not pleaded sufficient facts to satisfy the second element. (*See* Dkt. 11 ¶¶ 15–28, 81–85.) Even if he had, Plaintiff has not pleaded sufficient facts to show that Defendant engaged in a constitutionally inadequate process. (*See id.* ¶¶ 15–18, 23–25, 82–85.) Although Plaintiff alleges that his disciplinary proceedings were procedurally defective and tainted by bias, retaliation, and conflicts of interest, he does not plead facts to

support these allegations. (*See id.* ¶ 4.) *See Iqbal*, 556 U.S. at 678 (explaining that a cause of action that is supported only by conclusory allegations will not state a complaint that is plausible on its face). Although colleges generally must "give students notice and a hearing before suspending or expelling them," *Valencia Coll.*, 903 F.3d at 1234, the conclusory nature of the amended complaint prevents the court from determining whether Plaintiff received sufficient process. For these reasons, Count XIII is dismissed.

### 14. Count XIV

Count XIV alleges that Defendant breached a multitude of undefined duties imposed by contract and common law. (*See* Dkt. 11 ¶¶ 86–89.) According to the amended complaint, Defendant owed Plaintiff "duties of fairness, honesty, and good faith under both contract and common law," which Defendant allegedly breached when it suppressed evidence, ignored administrators' conflicts, denied Plaintiff's request for accommodations, and selectively enforced its policies. (*See id.* ¶¶ 87–88.) Defendant maintains that this cause of action should be dismissed because it "is duplicative of his breach of implied covenant claim and his general negligence claim" and further because the amended complaint fails to identify the source of these purported duties. (*See* Dkt. 13 at 18.) In response, Plaintiff claims for the first time that the nonspecific duties in Count XIV stem from "Florida . . . consumer protection statutes, including the Florida Deceptive and Unfair Trade Practices Act." (Dkt. 31 at 26.)

To survive a motion to dismiss, a complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (alteration adopted and quotations omitted). "Thus, at a minimum, notice pleading requires that a complaint contain inferential allegations from which [a court] can identify each of the material elements necessary to sustain a recovery under some viable legal theory." *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1320 (11th Cir. 2006) (emphasis and quotation omitted). Count XIV does not provide Defendant with any notice—let alone fair notice—of the nature of the claim. (Dkt. 11 ¶¶ 86–89.) Count XIV fails to identify any source for Defendant's purported "duties of fairness, honesty, and good faith," aside from "contract and common law" generally. (*See id.*) Further, Plaintiff cannot remedy this deficiency in his response to Defendant's motion. *Davis-Harrison v. Chief U.S. Prob. Officer Middle Dist. of Fla.*, No. 22-14334, 2024 WL 2874046, at *2 (11th Cir. June 7, 2024) ("[A] plaintiff cannot amend [a] complaint through a response to a motion to dismiss, even if [the plaintiff] is 'proceeding pro se.'" (quoting *Dorman v. Aronofsky*, 36 F.4th 1306, 1317 (11th Cir. 2022))). Even still, Plaintiff's belated explanation remains ambiguous. (*See* Dkt. 31 at 26 (explaining that the purported duties alleged in Count XIV arise, in part, from Florida's "consumer protection statutes, *including* the Florida Deceptive and Unfair Trade Practices Act," which do not arise under contract or common law (emphasis added).) Should Plaintiff file a second amended complaint, he must take care to state his claims with sufficient clarity so that Defendant may have "fair notice of what the claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93. Accordingly, Count XIV is dismissed.

**CONCLUSION**

Accordingly:

1.    The motion to dismiss (Dkt. 13) is **GRANTED**.  The amended complaint (Dkt. 11) is **DISMISSED without prejudice**.

2.    Plaintiff may file a second amended complaint on or before April 10, 2026, if he can do so in good faith.  The court cautions Plaintiff: "[A]n order dismissing a complaint with leave to amend within a specified time becomes a final judgment if the deadline to amend expires without the plaintiff amending [the] complaint or seeking an extension of time."  *Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co.*, 953 F.3d 707, 719 (11th Cir. 2020).

3.    Should Plaintiff file a second amended complaint, he may not assert new causes of action, including those mentioned for the first time in his response to the motion to dismiss, unless he first files a motion establishing good cause under Federal Rule of Civil Procedure 16(b)(4), and obtains the court's consent, as the deadline to amend pleadings has now passed.  (*See* Dkt. 33.)  The second amended complaint shall avoid all shotgun pleading concerns mentioned in this order.  If the second amended complaint brings a claim without correcting all pleading deficiencies identified in this order related to that claim or if the second amended complaint fails to comply with any of the directions in this order, the court may dismiss the second amended complaint without notice to Plaintiff.

- 44 -

**ORDERED** in Orlando, Florida, on March 11, 2026.

JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party